McIlvaine, J.
This case has been considered with several others, all of which were actions by the plaintiff' in error to recover on account of subscriptions to the capital stock of the Mansfield, Coldwater and Lake Michigan Railway Company. The plaintiff’s right to recover is based on an alleged consolidation of the Mansfield, Coldwater and Lake Michigan Railway Company and the Ohio and Michigan Railway Company; under the consolidation act of 1856, whereby it is alleged the plaintiff corporation was formed and succeeded to the rights of the consolidating companies. The decision of questions in common is reported in Brown’s case, ante 223. Only such questions as are peculiar to this case will be disposed of in this opinion.
1. The original petition was based on an instrument, de« *253 livered by the defendant to the railway company on the 14th of April, 1871, of which the following is a copy:
“ SUBSCRIPTIONS
“ To the capital stock of the Mansfield, Coldwater and Lake
“ Michigan Railway Company.
“ Books opened at Mansfield, Richland county, Ohio,
“June 25, A. d. 1870.
“ By order of
“ J. Purdy,
“ S. B. Stursess,.
“ E. H. Reese,
“ L. B. Matison,
“ D. Duelan, and
“ H. H. Stursess,
“ Incorporators.
“We and each of us do hereby subscribe the No. of shares set opposite our names, to the capital stock of the-Mansfield, Coldwater and Lake Michigan Railway Company. Said shares to be $50 each, and payable in accordance with the statute in such cases made and provided, on this condition, to wit: That said railway shall pass through Henry county and the town of Napoleon, and establish its depot within eighty rods of the town plat of said town.
“NO. 0E SHARES.
(Signed,) “ J. A. Stout........................100.”
By the answer, an issue was made as to the performance of the conditions named in the instrument.
The special findings on this issue were as follows: “ Work was commenced on the same” (the road of the Mansfield, Coldwater and Lake Michigan Railway Company) “ on the-8th day of June, 1871; but the contract for said work was let by said company on the 9th of May, 1871. The Mansfield, Coldwater and Lake Michigan Railway Company never located its road through the county of Henry, Ohio, or through the town of Napoleon, in said county, except as it was located by the letting of said contract; the said Mansfield, Coldwater and Lake Michigan Railway Company never established a depot at Napoleon, or within *254 eighty rods of the town plat of said town; but the consolidated company established their depot in the town of Napoleon, on the 5th of December, 1871.”
Although this finding lacks that definiteness which should characterize a special verdict, yet it is plainly inferable therefrom that the road was located through Henry county and the town of Napoleon, on the 9th day of May, 1871.
There has been some contention whether the instrument sued on, is to be regarded as a subscription of stock, subject to a condition precedent, or as a mere offer to subscribe, when the conditions named might be performed. This question we deem to be immaterial in this case, as there is no pretense that the offer, if a mere offer it be, was at any time withdrawn. The important question is, Have the conditions been performed ?
The condition “that said railroad shall pass through Henry county and the town of Napoleon,” we think was performed by the railway company locating its road through the places named, on the 9th of May, as above stated. This would be clearly so under the authority of Chamberlain’s •case, 15 Ohio St. 225, and A. & N. W. R. R. Co. v. Smith, Ib. 328.
And if the provision, that the railway company shall establish its depot within eighty rods of the town plat of Napoleon, can not, under the authority of the same case, be regarded as a mere stipulation or condition subsequent, the fact that it was performed by the plaintiff, on the 5th of December, 1871, long before the commencement of this suit, is clearly found in the special verdict.
But it is here objected, on part of defendant, that this •condition could be performed only by the railway company. It is true, that by the strict letter of the condition, it was the depot of the railway company that was to be established, etc.; but when this provision is construed with reference to the consolidation act then in force, we are of opinion that it was within the contemplation of the defendant that the railway company might become merged in a consolidated -company, which would succeed to all its rights, and might *255 perform the conditions of their subscriptions to its capital stock.
This construction of the contract is objected to on the ground that the defendant is thereby brought into relations with the new or consolidated company without his consent. The answer to this objection is: Iiis status in relation to the consolidated company, is fixed by his contract of which the consolidation act is to be considered a part, and whatever that status may be, it must be regarded in law as voluntary.
2. The special verdict contains the following finding: “No action was taken, either by the Mansfield, Coldwater and Lake Michigan Railway Company, or by the consolidated company, after the location of' the road through Henry county, or the establishment of the depot as aforesaid, requiring the defendant to pay his subscription, except that notice, as required by the resolution of the directors, of April 15,1871, was published in the newspapers of Mansfield, Ohio, and of Henry county, Ohio, for six months, .commencing with April 15, 1871.”
The resolution referred to, was passed by the directors of the railway company, and “ required the stock subscription to that company to be paid as follows : Five dollars on each share at once, and five dollars on each month, after that date,” at the office of the company at Mansfield, Ohio, and to Henry H. Sturgess, assistant treasurer of the company. Did this call apply to defendant’s subscription, and did it inure to the benefit of the plaintiffs?
The statute in relation to the payment of subscriptions to stock in corporations (sec. 6 of the act of May 1, 1852, S. & 0. 276), pi’O vides: “An installment of five dollars on each share of stock shall be payable at the time of making the subscription, and the residue thereof shall be paid in such installments, and at such times and places, and to such pei’sons as may be required by the directors of such company.”
The defendant’s subscription being subject to a condition precedent, of course there was nothing payable at the time *256 It was delivered, nor was it liable to calls until the condition was performed; yet we think that after it became absolute by performance of the condition, it became the duty of the defendant to pay installments at the rate, and at the time and place, and to the officer of the company named in the resolution. And further, if after consolidation the new company kept its office at Mansfield, and an officer there charged with the duty of receiving payment on account of subscriptions to the stock of the original company, we see no substantial reason for holding that the' call of April 15th should not continue to operate for the benefit of the new company, as successor to all the rights of the old companies.
3. The petition, in the action below, alleged that on the 10th of May, 1871, the Mansfield, Coldwater and Lake Michigan Railway Company, whose line of road was in process of construction, consolidated with the Ohio and Michigan Railway Company; that on the 20th of December, 1870, the directors of said companies duly entered into an agreement to consolidate, in accordance with the statute of Ohio; that said agreement was duly ratified and adopted by the stockholders of said companies respectively, and that said agreement, duly certified, was filed with the secretary of state of the State of Ohio. The answer denies that the directors of the Mansfield, Coldwater and Lake Michigan Railway Company had, at that time or any other time, any legal right or authority to enter into said agreement.
We understand that the question, whether the Mansfield, Coldwater and Lake Michigan Railway Company was within the description of corporations authorized to enter into an agreement of consolidation, was thus fairly put in issue.
The statute under which this consolidation was attempted to be made (66 Ohio L. 127) provides, “that it shall be lawful for any railroad company in this state, . . . whose line of road shall be made, or in progress of construction, . . . to consolidate its capital stock with the capital *257 stock of any railroad in an adjoining state,” etc. Section 2 of the act (53 Ohio L. 143) provides “ that said consolidation shall be made under the conditions and restrictions following—that is to say: First. The directors of the several corporations may enter into a joint agreement, under the corporate seal of each company, for the consolidation of’ said companies,” etc. Under these provisions it is quite clear to our minds that any step or movement, by any company, toward consolidation is wholly unauthorized unless the line of its road be made or be in process of construction.
By the special verdict in this case, it was found that the joint agreement of consolidation between the consolidating companies, each of which had a projected line of railway, was entered into on the 28th of December, 1870. It appears, indeed, that the contract for constructing the road was let by the company on the 9th of May, 1871, and that work was commenced on the 8th of June following; but it is expressly found, that “ the road of the Mansfield, Coldwater and Lake Michigan Railway Company was not in process of construction either on the 28th of December,, 1870, or on the 10th of May, 1871.” Undoubtedly it was the opinion of the jury, that the road was not put in process of construction by the letting of the work; and though they may have been wrong in this, the fact, nevertheless, that the road was not made, or in process of construction, on the 28th of December, 1870, clearly appears in the verdict.
From this state of the case, it is clear that the consolidation of these companies was without authority of law, and' upon direct inquiry would be declared void. But the question here is, can the defendant in this case insist upon the' illegality of the consolidation ?
Let it be conceded that the defendant is estopped from denying at least the de facto existence of the Mansfield, Coldwater and Lake Michigan Railway Company, as a corporation, by delivering to it his conditional contract of sub *258 scription, or by making and continuing his offer to subscribe upon the performance of the conditions named, and let it be further conceded that he thereby assented to all previous as well as subsequent acts done or to be done toward consolidation in accordance with the laws then in force, still it by no means follows that he must be regarded as consenting to a consolidation which the law did not authorize. It is found by the special verdict that he had no knowledge of the progress of consolidation from first to last. He can not, therefore, be held to have acquiesced in or promoted an illegal consolidation.
Instead of this being a ease in which the defendant by reason of something he has done is estopped from setting up the illegality of the consolidation, it is a case in which the plaintiff’ who claims under a contract with another corporation, must show that he has succeeded to an interest in that contract in a way and by means prescribed by the law.
While it is the duty of the defendant to perform his contract, when construed, as it must be, in the light of the consolidation act, it is also his right to defend himself against any claim made against him on account of it, which it does not warrant. And there is no warrant in the contract or in the statute for compelling him to take the stock, or to pay for the stock, of any corporation other than the Mansfield, Coldwater and Lake Michigan Railway Company or its legal successor. And it is quite certain that the defendant could have contemplated no other corporation as successor to the company for whose stock he subscribed than one which might be created under and by virtue of the act of 1856.
Our conclusions, therefore, are, that the defendant, who had no direct contract relation with the plaintiff’, and who had not otherwise recognized its legal corporate existence, was entitled to dispute such existence, and having done so, •and having made it appear that the line of road of the Mansfield, Coldwater and Lake Michigan R’y Company was not made or in process of construction on the 28th day of *259 December, 1870, tbe date of the agreement to consolidate, the plaintiff had no legal right to recover in the action.

Judgment affirmed.

Welch:, C. J., White, Rex, and Gilmore, JJ., concurred.